May it please the Court, Lawrence Rolving on behalf of Richard Kennedy. This is a disability appeal arising under the Social Security Act. Mr. Kennedy suffers from borderline intellectual retardation or borderline intellectual functioning. He suffers from sickle cell anemia, and he suffers from bilateral avascular necrosis of the hips. The administrative law judge found that Mr. Kennedy did not meet or equal any of the applicable listings, and that's in Administrative Record pages 18 and 19. And the issue in this case is whether Mr. Kennedy equaled any one of those listings with the combination of impairments. And the critical factor that, in reading paragraph 3 of the judge's enumerated findings, is that there is no mention of the impact of the avascular necrosis on the ability of, on the facts of this case, for Mr. Kennedy to equal the listing. And so the first thing that we need to do is to look at the regulation, which is 416929, 20 CFR 416929. And in paragraph B1Bii, there has to be something of at least equal medical significance. In this case, Mr. Kennedy has an IQ of 71. He is one moment away from an IQ of 70, which would qualify him for benefits, with just the intellectual functioning and the presence of sickle cell anemia alone. And so the question is whether the avascular necrosis is of at least equal medical significance. And I think that we can answer that by looking at how the commissioner defines the concept of equaling, which is in a very small section of the regulations, by looking at POMS. And in POMS DI 24515.056, paragraph B3, the commissioner tells the Social Security Administration components that make disability determinations when looking at a combination of impairments to see if the set of symptoms, signs, and laboratory findings, which combined, are determined to be equal in severity to that listed set, which the combined sets can be most closely related. And so when the administrative law judge failed to consider the avascular necrosis in assessing equaling, the ALJ committed legal error. The commissioner, in her brief, states that the additional impairments needed to show that Mr. Kennedy had lower cognitive functioning. That's just not the test. It's equal medical severity in an unrelated body part. In this case, the hips. The commissioner cites the Supreme Court decision in Sullivan v. Zebley, where the Supreme Court noted that an IQ score of one point higher, coupled with a severe growth impairment, would not equal a listing. Well, that's in the singular. We have two additional physical severe impairments, which the ALJ identified. But conceptually, is it different? It is. The impairments are, in a non-technical fashion, they are serious. They are, in some ways, tragic. They don't affect this person in the same way. The government's argument is plainly that the other effects as a result of the physical impairments don't change his cognitive abilities. That's true. They don't change his cognitive abilities. What they do change is, under the commissioner's concept of equaling, is we have two severe impairments, each of which is a blade on a pair of scissors, coming together to cut off the concept of the ability to engage in gainful activity. As a presumptive matter of law, and the commissioner may never rebut a finding of equaling once the evidence is there, if you have to establish that an IQ of 71, plus another physical or non-physical impairment, plus something else, diminishes their intellectual functioning, the only way to prove that their intellectual functioning would be diminished would be if you had an IQ score of 70 or below. Which means that the concept of equaling the 1205C listing is not very rare, which is what the commissioner characterizes the concept of, but impossible. Because once we had an IQ score of 70, we would be in the meet category, not the equal category. There's some degree of tunnel vision going on here. And I understand your argument saying you've got to consider the combination of ingredients. But with regard to the cognitive impairment, there's artificiality in drawing a line between 70 and 71. But that's just how it is, because incrementally it's always difficult to draw a line. So they've drawn the line there. And if other factors don't affect cognitive ability, I'm not sure what else. There may be, in the physical realm, different ailments we'll work together to worsen somebody's ability to pick something up, stand, all the other factors that we look at in terms of being able to maintain gainful employment. The cognitive category just strikes me as something somewhat different, so that unless there's some connection between the physical ailment and cognitive ability, and the listing that you're looking at is one that's measured by this IQ scale saying it's 70, I may regret the circumstances, but I'm not sure why it is the government's wrong about that. Well, the principal problem is that the ALJ didn't say that, and the ALJ plainly ignored the avascular necrosis in his listings discussion and never really addressed. We have the conclusion that this person doesn't equal a listing, and then we have a two-page discussion of why he doesn't meet the sickle cell anemia, because he had five ER visits and one hospitalization. You actually need three hospitalizations in a 12-month period, so he doesn't meet the listing for sickle cell anemia. And then the judge discusses 1205C, and he goes through the A, B, C, and D subcategories. The only one that's relevant here is the C category. And he says you only have an IQ of 71. But the judge never folded into that mix the question of whether the avascular necrosis is, in the words of the regulation, at least of equal medical significance. It's the medical significance. So we have an individual that's limited. Yeah, so I'm having trouble with this myself, trying to understand what medical equivalence is. Sullivan makes it clear this is a bright-line test, a per se rule, and that if you don't meet that, then you go to step five and you work it all out in that context, insisting that it's a medical equivalence. So is it your understanding you have to provide medical evidence that would say he has the equivalence of a 70, at least a 70 IQ? You have to translate it into something that someone would agree with, that this additional, like the avascular necrosis, produces a cognitive result, which is the equivalent of an IQ of 80, excuse me, of 70. I don't think that that's the right reading of the regulation, because that's not the reading that the POMS provision gives to it. And this POMS provision is not imposing new duties on the administrative law judge. It's just explaining what this ambiguous phrase of equal medical significance means. I think that the correct reading is that the listings are a list of impairments with medical signs and symptoms of a sufficient severity that the commissioner will conclude as a matter of law in the bright-line test that the person's not able to engage in gainful activity. And so when we look at medical significance, we're asking, is there something that is so significant that it substitutes for one point in the IQ, not in terms of cognitive functioning, but in the whole-person analysis? And the whole-person analysis here is we have a marked limitation in the ability to stand and walk because of the avascular necrosis. All right. So what you're saying is that in order to evaluate equality, you look at the set or population of all people with a 70 IQ and then determine their employability, and then look at this gentleman with a 71 IQ and create a population of such people, compare them, and then factor in these additional concerns that you've voiced and ask whether he is more like the group of 70 IQ than 71. Is that kind of, in the terms of employability, not testimony of a medical professional? Well, if we just substitute the whole person in a medical composite rather than employability, I think that's what the listings are concerned with, is the medical criteria, because it's very clear from the regulations and from the sub-regulatory promulgations that interpret the regulations that we don't consider age, education, and work experience, which are employability factors. So we extract those out. But on the list of things that we extract out of the analysis is not residual functional capacity because residual functional capacity is a medical legal conclusion based on medical facts. And so is Mr. Kennedy worse off given the fact that he was born with sickle cell anemia and he was born with this developmental cognitive disorder? Is he better off at 71 when we add in the avascular necrosis of the hips, bilateral, as compared to a person medically that has a 70 IQ and just the sickle cell anemia but not the avascular necrosis? Because this listing is unusual. Most of the listings are talking about a single impairment, whether it's a back or hands, kidney function. This particular listing requires two separate and distinct impairments. It requires a cognitive developmental disorder, that's the 70 or less IQ, and it requires another severe physical or mental impairment. And so the ordinary task of assessing equaling is more difficult. And so the district court in this case said, well, just because it's really, really bad doesn't mean that you equal. No, it takes a third impairment. And that's what the district court missed. It takes something else other than what the listing already has included, which is the IQ and another severe impairment. Now we add in a third. And I have a minute left. I'd like to reserve that. You may. Good morning, Your Honors. Elizabeth Feer for the Acting Commissioner of Social Security. My opponent has just admitted the only component of 1205C that's at issue here is the IQ score. The case law is very clear and the regs are clear that you equal the listing only if your other, if the record shows that he has another medically determinable impairment established by medical evidence that would lower that IQ to the level of the listing. Where is it clear in the regulations that that's, because let me walk you through. I've wrestled with this before I get to POMS. There's a regulation that says what we will, what evidence, what evidence do they need to put on? That's what I'm trying to figure out. If I were picking up this, that's why I don't do this work, at least not as a volunteer. I'm looking at the regulation 416.926, medical equivalence. So first of all, A says what's a medical equivalence? And it says it's at least equal in severity and duration. How do we determine the medical equivalence? And it gives a statement under that heading which says if you have other findings related to your impairment that are at least of equal medical significance. It doesn't say anything about IQ or anything right there. And then you go down to C and it says what evidence do we consider when we determine if your impairment medically equals a listing? And then it says when we determine if your impairment medically equals a listing, we consider all evidence in your case record about your impairments and its effects on you that is relevant to this finding. We do not consider your vocational factors, which is what counsel just said, of age, education, and work experience. We also consider the opinion given by one or more medical or psychological consultants designated by the commissioner. So then I go over to POMS, and I'm looking at POMS, which is the next level of clarification. And then it says listing 1205C is based on a combination of an IQ score with an additional and significant mental or physical impairment, and then criteria such that a medical equivalence determination would very rarely be required. However, slightly higher IQs, 70 to 75, in the presence of other physical or mental disorders that impose additional and significant work-related limitations of function, may support an equivalence determination. Well, where does that say it has to be measured and translated? Where does this hip necrosis have to be translated at some point into an IQ, a quantifiable IQ score of 70? Okay, well, let me take you back to the regulation. Okay. The first subsection, small b, capital B, you still have to exhibit all of the or one of the equivalence conditions is when you have all of the findings, but one or more of them is not as severe as that specified in that particular listing. Here it's not in dispute he satisfied the second prong of the listing. The one he hasn't satisfied is the IQ score. Therefore, he has to prove that the evidence shows he meets the element of that listing that he hasn't met. And if you go back to the POM section, in the beginning of it, it says that in order to meet a listing, you have to satisfy the capsule definition. It's under capital B1. To determine that a mental impairment does not meet but equals a listing, it must be shown that it satisfies the capsule definition of the impairment. The definition of this impairment is mental retardation. We've all admitted the only element of it he doesn't meet is the IQ score. Therefore, in order to equal it, he has to show that the rest of the medical evidence has lowered his IQ score. And that's Lewis exactly. It's also in Zebley. So what is it in this record? Well, that's he still has not proffered a listing, an equaling theory. He says it's impossible because it's impossible to show that your IQ, an IQ of 71 is 70, but there are ways he could show his other impairments combine to lower his intelligence. If you look at the facts in Lewis, for instance, and I know the Court found no equaling. Counsel, if his other impairments cooperated in lowering his IQ, why wouldn't that be reflected in the IQ? Well, Your Honor, the IQ in and of itself is an element of the listing. So he doesn't have that. Therefore, he has to show that he equals it. I'm still trying to understand, then, why are you saying that the. What would he have to show with the necrosis that he's arguing, why that doesn't meet the obligation as a third physical disorder that has the effect, effectively, of putting him on a par with somebody with a 70, at least a 70 IQ? Well, that's that's not what the listing is about. That's changing the way in which someone equals in the listing. That's basically saying we don't care about that IQ anymore. We're going to say you meet it because you you meet the second prong twice. That's that's essentially exactly what their argument is. That's not equally. I think the question posed is, all right, if the other the impact of the other conditions on your employability or your ability to lead a happy life or whatever is irrelevant, what's relevant? It's not irrelevant, Your Honor. The other, his physical conditions. They qualify under the second prong, but you're saying that he must qualify under the first prong. How does he qualify under the first prong if he has a 70 IQ? 71 IQ. He can show that his other impairments affect the way he functions mentally. He hasn't done that. You can't just ignore a component of the listing. His second physical impairment goes to his residual functional capacity, not whether he meets the listing. He's trying to say he's presumptively disabled based on this listing. That is not the way you prove it. Let's assume that's 100 percent correct. If the issue is his other mental conditions. He's not arguing about other mental conditions. All right. So you're saying then that failure to argue about the mental disqualifies him. Under the listing. Yes. Wait a minute. OK. I'm still trying to penetrate this. Palm says slightly higher IQs. So saying, OK. All right. He doesn't meet the 70 IQ. He's 71. In the presence of other physical or mental disorders that impose additional and significant work related limitation of function may support an equivalence determination. OK. So it's that same. It's not addressing the IQ. He can come in and show meet the other part of additional and significant mental or physical impairment. That's all the hip issue goes to in this case. That is the issue, because the only element of the listing hasn't met is the IQ score. He's he's met the other one in space. He doesn't satisfy the listing by equaling by saying, well, I'm really physically limited. It doesn't satisfy the mental component. OK, so that comes back to my question. That comes back to my question. What is it that he had to do to proffer the hip issue as a addressing the IQ issue? He could show that he was so. I honestly don't think he can do it in this case. But I can. A theory would be that perhaps the medications he was taking from that hip made him so groggy he couldn't follow directions. He could say that he was so distracted by the pain all the time that he couldn't follow directions. He couldn't get along with people at work. He couldn't complete simple tasks. He has not said any of that. They still have not proffered any theory as to why, because he's very physically limited, he satisfies the mental component of listing 1205. So in order to meet the test you're proposing to us, any physical impairment has to trigger a mental component? In this particular case, with this particular listing, yes, because the component that's not met is the IQ score. He's met the other one. He's met that. We all agree. That doesn't mean because you, and I think the district court did get it right, you don't say because I really met the second prong, I'm forgiven the first prong. And that's the only equivalence theory that claimant has proffered. And the case law here is very clear that an ALJ's duty to address equaling specifically in a decision is only triggered when a claimant proffers a cogent, not even, you know, adequate, but a cogent equaling theory. The POMS itself is not an equaling theory. It just says maybe if you have an IQ that's slightly above, you might be able to prove that you equal it with other, you know, and that POMS, keep in mind that it's not saying, well, there are ways to show that you have other conditions that could lower your mental function. And to take the case of Lewis as an example, in that case, there's lots of evidence in that record that even though his IQ was higher, that he had problems functioning because of other impairments. And they didn't allow him to follow instructions. They didn't, you know, his mother said he wasn't able to even be in the present when he was around people. There's absolutely nothing like that in this record. And this record actually has, he didn't, when you look at what would have triggered the ALJ's duty, claimant's representative at the hearing never brings up this equaling thing. He barely addresses it in the appeals counsel letter, but once again, it's just citing that POMS. It's not proffering any theory. And if this was such a grave error, you'd think that the person representing the claimant at the hearing would have said, Your Honor, I'd like you to look at these other issues and why they lower his IQ below the 70, practically, functionally.  By comparing populations with a 70 IQ to populations with a 71 IQ plus these physical impairments, is that where you're going? No, and I don't think that's a valid look at the listing at all. We're looking at this, these cases are all very fact specific. This is about this claimant and how his IQ is beyond that required to satisfy the listing. What in his record shows that notwithstanding that one degree difference, he is nonetheless mentally incapacitated to the level contemplated by the listing. And we don't have that here at all. So we think the district court got it right. And, you know, that's the ALJ issued an RFC that accounts for all of those functional physical limitations, and there's just nothing here that shows he's mentally retarded according to the listing. So if you don't have any further questions. Thank you. Thank you for the argument. Rebuttal. If the government's position is correct, then the discussion in Palm's construing the regulation is wrong. The two can't stand in the same room. The commissioner's position in this case is wrong. And there's no evidence that medication, distraction, social, or simple, inability to perform simple tasks has anything to do with IQ. Those have to do with other factors of concentration, persistence, and pace. Those don't impact IQ. So if the only way that you can equal 1205C is if you actually meet 1205C on a test, then we don't need this discussion in Palm's. It's superfluous. And I think the Court should avoid rendering the commissioner's interpretation of her own regulation superfluous. Well, what do you ‑‑ the argument is that the ‑‑ it isn't ‑‑ she's reading your hip problem. The client's hip problem is piling on on the second requirement. You said it's three ‑‑ it's cognitive plus another severe impairment, and then the district court and DILJ implicitly added a third that you're ‑‑ and she seems to be, counsel seems to be saying, well, when you put in the hip into the equation, you're bolstering what's already there with sickle cell anemia. Okay. So you have to put into that additional evidence the evidence that translates into an actual IQ equivalency. And you're saying that Palm's ‑‑ what in Palm's is rendered superfluous then? Right. Well, no, I'm asking, what's superfluous if, in fact, you don't meet the additional and significant physical impairment part of the Palm's statement? Then your hip might have put you over, if the sickle cell anemia wasn't quite enough, hip would put you well over the barrier there. But if you want to attack the IQ problem, then you've got to come up with something that translates into a true cognitive equivalence. Well, if the commissioner's position here is correct, then the hip problems would have to result in three or more hospitalizations in a year. And that's not what equivalence is about, because that's the missing finding for the sickle cell anemia. He has one hospitalization and multiple ER visits. He needs three hospitalizations in a 12‑month period. If he doesn't have that, would the avascular necrosis equal that? The judge didn't consider it. And the problem here in this case is that Dr. Dudley, who did the psych eval as the non‑examining physician, considered the psychological testing, but he didn't consider the internal medicine evaluation or any of the other records showing the avascular necrosis, because those were added to the record after Dr. Dudley finished his. So there is no consideration. And the judge's decision clearly doesn't consider the avascular necrosis in the context of the equaling argument. Equaling what? Equaling 1205C. No, equaling what within 1205C? Equaling the medical severity that this person is medically worse off. So you're disagreeing that the hip evidence is tied in any way to IQ? I firmly disagree with that, yes. How is it tied to IQ? It isn't tied to IQ. It's tied to overall ability to function. Okay, you're talking about a combination. Correct. Yes. I thought Sullivan said that that didn't count. That's not what ‑‑ Sullivan is talking about an IQ score above 70 and a singular additional growth impairment, and the interpretation of the regulations provided by the commissioner is implying that if you have a third impairment, if you have an additional significant work-related limitation that's not already been considered, that that can push the matter over the edge. Okay. All right. Thank you. Thank you. Thank both counsel for your helpful arguments. The case just argued is submitted.
judges: Singleton, Fisher, Clifton